**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CLIFFORD L.G.,**

**Plaintiff,** **22-CV-789Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

**DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #14.

**BACKGROUND**

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on March 11, 2020, at the age of 32, alleging disability due to bipolar disorder, intermittent explosive disorder, post-traumatic stress disorder ("PTSD"), and depression. Dkt. #7, pp.43 & 346.

On August 24, 2021, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), Zach Fosberg, at an administrative hearing

conducted telephonically before Administrative Law Judge ("ALJ"), Stephen Cordovani. Dkt. #7, pp.39-75. Plaintiff testified that he lived in an apartment with his girlfriend, who works full-time, and three children, ages 12, 5, and 4. Dkt. #7, pp.44-45. His girlfriend takes him to medical appointments; he does not drive. Dkt. #7, p.46. He does not really leave his home. Dkt. #7, p.55. His girlfriend grocery shops. Dkt. #7, p.60. He prepares easy things for dinner for the children; cleans up; and gets the younger children ready for bed. Dkt. #7, p.64.

Plaintiff left school in the ninth grade and does not have a GED. Dkt. #7, p.58. He is unable to work because he doesn't get along well with people. Dkt. #7, p.55. He cannot be around more than 3-4 people. Dkt. #7, p.60. His last employment was a seasonal maintenance position in a retail store which he left because a coworker started mouthing off to him and he "lost focus of everything and almost hit him" and because his manager told him to do something and he "almost got physical." Dkt. #7, pp.48-53. Plaintiff explained that he doesn't "react all that well to being told what to do." Dkt. #7, p.48. In the past few years, plaintiff has been in involved in several physical altercations with strangers. Dkt. #7, p.60.

Plaintiff described his moods as "all over the place" with short periods of manic episodes and long periods of depressive episodes. Dkt. #7, p.56. In the past month, he estimated that he was manic for about a week and depressed about two weeks. Dkt. #7, p.57. When he is manic, he is full of energy, easily distracted and unable to sleep; when he is depressed, he feels worthless, has no energy to get out of

bed and has a very hard time doing normal, daily routines, such as getting dressed, cleaning or cooking. Dkt. #7, p.57. He has a hard time concentrating and does not handle stress well. Dkt. #7, pp.58-59. He does not sleep more than 2-3 hours per night because he wakes up with nightmares. Dkt. #7, p.59.

When asked to assume an individual with plaintiff's age, education and past work experience who has no exertional limitations and was able to respond to simple instructions and tasks, maintain attention and concentration for two hour increments and regular attendance for simple, unskilled work without supervisory duties, independent decision making, strict production quotas, or more than minimal changes in work routine and processes, with no more than occasional interaction with supervisors and co-workers and no team, tandem or co-dependent work and no more than incidental interaction with the general public, the VE testified that such an individual could perform plaintiff's past work as a cleaner, which is a medium exertion, unskilled position, and could also work as an equipment cleaner, which is a heavy exertion, unskilled position, or as a laundry worker, which is a medium exertion, unskilled position, or price marker, which is a light exertion, unskilled position. Dkt. #7, p.71. The VE further opined that if such individual was off task more than 10% of the work day or absent more than once a month, that individual would be unemployable. Dkt. #7, p.73. In addition, the VE indicated that verbal confrontations with co-workers or supervisors could result in immediate termination if sufficiently severe, but otherwise would generally be addressed progressively with an informal discussion followed by a formal write up and then termination. Dkt. #7, pp.73-74.

The ALJ rendered a decision that plaintiff was not disabled on September 1, 2021. Dkt. #7, pp.20-34. The Appeals Council denied review on August 23, 2022. Dkt. #7, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on October 21, 2022. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step

sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the date of application on March 11, 2020; (2) plaintiff's PTSD, major depressive disorder, anxiety disorder, intermittent explosive disorder, personality disorder and learning disorder constituted severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC

to perform work at all exertional levels and could understand, remember and carry out simple instructions and tasks, maintain attention and concentration in two-hour increments, maintain regular attendance for simple, unskilled work, and perform work with no supervisory duties, independent decision-making or strict production quotas, with minimal changes in work routine and processes and occasional interaction with supervisors and co-workers, but no team, tandem or co-dependent work and no interaction with the general public; and (5) plaintiff was capable of performing his past relevant work as a cleaner, which is a medium exertion, unskilled position, or as an equipment cleaner, which is a heavy exertion, unskilled position, or as a laundry worker, which is a medium exertion, unskilled position, or as a price marker, which is a light exertion, unskilled position, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.22-33.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 567-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c (a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, ALJs are required to explain

their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support their findings regarding medical opinions. *Jason R. V. Comm'r of Soc. Sec.,* 22-CV-493, 2024 WL 4839356, at *3 (W.D.N.Y. Nov. 19, 2024), *citing* 20 C.F.R. § 404.1520c (b)(2) & (c).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Jacqueline L.,* 515 F. Supp.3d at 7, *citing* 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* at *7-8, *citing* 20 C.F.R. § 404.1520c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec.*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

Plaintiff argues that the ALJ failed to provide an adequate explanation for his consideration of distinctive functional limitations from consultative examiners whose opinions he deemed persuasive. Dkt. #10-1, pp.10-19. Specifically, plaintiff challenges the ALJ's determination that plaintiff could have only incidental interaction with the general public and could have occasional interaction with supervisors and the general public. Dkt. #10-1, p.12. Plaintiff also argues that the definition of occasional, which permits up to one-third of the work day, conflicts with opinions limiting plaintiff to brief or superficial contact with others. Dkt. #10-2, pp.12-13. Furthermore, plaintiff argues that the ALJ failed to incorporate sufficiently restrictive limitations to account for Dr. Ippolito's opinion that plaintiff had marked limitations in his ability to regulate emotions, control behavior and maintain well-being or the opinion of Dr. Dekeon and Dr. Chapman that plaintiff was moderately limited in his ability to maintain attention and concentration. Dkt. #10-1, pp.13-15. Plaintiff also argues that Dr. Ippolito's assessment of a marked limitation conflicts with the ALJ's finding of a moderate limitation at step 3 for adapting or managing oneself. Dkt. #10-1, pp.15-16. Plaintiff asserts that a marked limitation in plaintiff's ability to regulate his emotions and maintain control of his emotional well-being would be highly disruptive to his ability to sustain work and the ALJ's limitation to unskilled work fails to provide an individualized assessment of plaintiff's RFC. Dkt. #10-1, pp.17-19.

The Commissioner argues that the ALJ's RFC determination is free from legal error and supported by substantial evidence. Dkt. #11-1, pp.7-14. More specifically, the Commissioner argues that the ALJ properly accounted for Dr. Ippolito's

assessment that plaintiff had a marked limitation in his ability to regulate emotions, control behavior and maintain well-being and reasonably tailored plaintiff's restrictive RFC based upon the medical opinions from Dr. Ippolito, Dr. Dekeon, and Dr. Chapman with respect to plaintiff's social limitations and limitations in concentration, persistence and pace. Dkt. #11-1, pp.7-12.

Plaintiff replies the the ALJ erred by assessing an RFC that was less restrictive than assessed by a consultative examiner whose opinions he found persuasive and by presenting the VE with a hypothetical that did not accurately present plaintiff's limitations. Dkt. #12, p.3.

Medical Evidence

Plaintiff underwent a consultative psychiatric evaluation with Janine Ippolito, Psy.D., on July 30, 2020. Dkt. #7, pp.424-427. A mental status examination indicated plaintiff was cooperative, but depressed and tearful. Dkt. #7, p.425. His attention and concentration was impaired due to emotional distress and lack of effort. Dkt. #7, p.426. Specifically, plaintiff was able to do the counting, one-step calculation, and serial 3's task without errors, but declined to attempt the two-step calculation and serial 7's task. Dkt. #7, p.426. He stated 5 numbers forward and 0 numbers backward and recalled 3/3 objects immediately and 0/3 objects after a delay, even when presented with a verbal cue. Dkt. #7, p.426. Dr. Ippolito estimated plaintiff's cognitive functioning to be in the average to below average range. Dkt. #7, p.426. His insight was deemed fair to good and his judgment fair. Dkt. #7, p.426.

Dr. Ippolito opined that plaintiff was able to understand, remember and apply simple directions and instructions, use reason and judgment to make work-related decisions, sustain an ordinary routine and regular attendance at work, and maintain personal hygiene and appropriate attire with no evidence of limitations. Dkt. #7, p.426. She further opined that plaintiff could understand, remember and apply complex directions and instructions with mild limitations and interact adequately with supervisors, co-workers and the public, sustain concentration and perform a task at a consistent pace, and demonstrate awareness of normal hazards and take appropriate precautions with moderate limitations. Dkt. #7, p.426. As a result of his emotional distress, Dr. Ippolito assessed a marked limitation in plaintiff's ability to regulate emotions, control behavior and maintain well-being. Dkt. #7, p.426. Her prognosis for plaintiff was guarded given the severity of his symptoms. Dkt. #7, p.427. She recommended that plaintiff follow up with individual psychological therapy and a psychiatric evaluation for medication management as planned. Dkt. #7, p.427.

On August 5, 2015, state agency review psychologist L. Dekeon, Ph.D., reviewed the evidence of record and noted that plaintiff had not received any mental health treatment and was not on any medication. Dkt. #7, p.158. Dr. Dekeon noted that Dr. Ippolitio's opinion relied heavily on plaintiff's subjective report of symptoms and limitations and concluded that Dr. Ippolito's opinion overestimated the severity of the plaintiff's limitations. Dkt. #7, p.163. Dr. Dekeon opined that plaintiff was not significantly limited in his ability to:

- carry out very short and simple instructions or detailed instructions;

- perform activities within a schedule;
- maintain regular attendance and be punctual within customary tolerances;
- sustain an ordinary routine without special supervision;
- make simple work-related decisions;
- ask simple questions or request assistance;
- maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness;
- set realistic goals and make plans independently of others; and
- travel in unfamiliar places and use public transportation.

Dkt. #7, p.161. Dr. Dekeon further opined that plaintiff was moderately limited in his ability to:

- maintain attention and concentration for extended periods;
- work in coordination with or in proximity to others without being distracted;
- complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- respond appropriately to changes in the work setting; and
- be aware of normal hazards and take appropriate precautions.

Dkt. #7, pp.161-162. Dr. Dekeon also determined that plaintiff was markedly limited in his ability to interact appropriately with the general public. Dkt. #7, pp.161-162. Dr. Dekeon explained that plaintiff

> demonstrates moderate impairment in his ability to interact adequately with others and marked impairment in his ability to regulate emotions/control behavior that impact social functioning, however he is able to appropriately engage in basic interactions to meet work related needs and would benefit from work settings requiring only brief or superficial contact with others.

Dkt. #7, p.162. Dr. Dekeon also indicated that plaintiff was limited to low contact settings and that he retained the capacity for work-related tasks and activities in low contact settings. Dkt. #7, pp.158 & 162.

On October 29, 2020, state agency review psychologist A. Chapman, Psy.D., reviewed the record of evidence upon reconsideration and opined similarly to Dr. Dekeon, except that Dr.Chapman assessed plaintiff's ability to interact appropriately with the general public as moderately limited. Dkt. #7, p.179.

Plaintiff established mental health care treatment with Horizon Health Services on September 17, 2020.[1] Dkt. #7, pp.521-549. He reported that he had been withdrawing from everyone and had been staying home for the past three years because he experiences anxiety and anger when he is around other people and was

[1] Although plaintiff established care with Horizon Health Services prior to Dr. Chapman's review upon reconsideration, the records were not available to Dr. Chapman at the time of his review.

afraid that he might act out against someone if he went out in public. Dkt. #7, p.521. Plaintiff's Depression PHQ-9 score met the criteria for major depressive disorder and his GAD-7 score met the criteria for generalized anxiety disorder. Dkt. #7, p.545. He also met the screening criteria for PTSD. Dkt. #7, p.545. Plaintiff's mental status examination noted a cooperative attitude, euthymic mood, appropriate thought content, logical thought process, and oriented cognitive status. Dkt. #7, p.538. Plaintiff's goal for counseling was to be able to better manage his angry outbursts as well as his mood swings. Dkt. #7, p.99. Plaintiff reported that his moods had slightly improved with prescribed medication as of April 5, 2021 and on May 17, 2021, plaintiff reported that his depression was less intense, although he continued to be pretty irritated. Dkt. #7, p.86. Plaintiff reported it was hard to track his mood because his children make him upset. Dkt. #7, p.86.

Plaintiff's counselor at Horizon Health Services, Bonnie L. Carroll, LMSW, completed a Mental Residual Functional Capacity Questionnaire on July 12, 2021, opining that it was unlikely that plaintiff would be able to maintain employment because he needed to continue medication adherence and individual counseling to develop coping skills for his PTSD, major depressive disorder and generalized anxiety disorder. Dkt. #7, p.465. LMSW Carroll indicated that plaintiff exhibited no useful ability to function in the following areas:

- work in coordination with or proximity to others without being unduly distracted;
- accept instructions and respond appropriately to criticism from supervisors;

- get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes;
- interact appropriately with the general public; and
- maintain socially appropriate behavior.

Dkt. #7, pp.467-468. LMSW Carroll further indicated that plaintiff was unable to meet competitive standards in the following areas:

- maintain regular attendance and be punctual within customary, usually strict tolerances;
- perform at a consistent pace without an unreasonable number and length of rest periods;
- deal with work stress; and
- use public transportation.

Dkt. #7, pp.467-468. LMSW Carroll also indicated that plaintiff would be seriously limited in his ability to:

- remember work-like procedures;
- maintain attention for two hour segments;
- sustain an ordinary routine without special supervision;
- complete a normal workday and workweek without interruptions from psychologically based symptoms;
- respond appropriately to changes in a routine work setting; and
- travel in an unfamiliar place.

Dkt. #7, pp.467-468. LMSW Carroll opined that plaintiff would be absent more than four days per month, on average, due to his mental impairments and that he could not engage in full-time competitive employment on a sustained basis. Dkt. #7, p.469.

The ALJ found Dr. Ippolito's opinion persuasive because it was generally consistent with and supported by plaintiff's subjective complaints and mental status examinations, which were normal other than an occasionally depressed mood; a depressed and tearful affect; impaired attention, concentration, and memory; fair to good insight; and fair judgment, and was also consistent with the opinions of Dr. Dekeon and Dr. Chapman. Dkt. #7, p.30. The ALJ found Dr. Dekeon's opinion persuasive for the same reasons, noting that his opinion was consistent with the opinions of Dr. Ippolito and Dr. Chapman, as well as with the modest treatment record. Dkt. #7, p.30. The ALJ found Dr. Chapman's opinion persuasive for the same reasons, noting that his opinion was consistent with the opinions of Dr. Ippolito and Dr. Dekeon and with the modest treatment record. Dkt. #7, p.31. As for LMSW Carroll, the ALJ noted that she is not qualified to render a medical opinion and opined that her assessment was not well explained because

> Her treatment records do not contain a resuscitation [sic] of the claimant's current symptoms or any clinical findings. Ms. Carroll's assessment contained multiple limitations, but in describing the clinical findings that support the severity of the limitations she assessed, Ms. Carroll acknowledged that it was based mainly on the claimant's "report" of the issues. There are no mental status examination findings or personal observations noted or referenced to support her assessment. The claimant's representative did not request any further records or other evidence that could support Ms. Carroll's assessment. Finally, her opinion is not consistent with the opinions of Drs. Ippolito, Dekeon, and Chapman. Accordingly, I find that Ms. Carroll's assessment is not persuasive.

Dkt. #7, pp.31-32.

Internal Consistency of the ALJ's Decision

It is well established that a step 3 determination is not an RFC assessment, but a means of rating the severity of a mental impairment. *Lynessa M. V. Comm'r of Soc. Sec*., 20-CV-971, 2021 WL 4437184, at *5 (W.D.N.Y. Sept. 28, 2021). Because the two determinations require distinct analysis and apply different standards, a determination made at step 3 need not carry over verbatim to the ultimate RFC determination. *Brandiann B. V. Comm'r of Soc. Sec*., 22-CV-633, 2025 WL 405817, at *7 (W.D.N.Y. Feb. 5, 2025); *See Chappell v. Comm'r of Soc. Sec*., 18-CV-1384, 2020 WL 1921222, at *6 (W.D.N.Y. April 21, 2020) ("While the analysis at steps two and three concerns the *functional effects* of mental impairments, the RFC analysis at step four specifically considers *work-related* physical and mental activities in a *work setting."*). As a result, apparent inconsistencies between a step 3 finding and an RFC determination warrants remand only if the Court is unable to discern the ALJ's reasoning or reconcile the inconsistent findings. *Jay v. Comm'r of Soc. Sec*., 17-CV-59, 2018 WL 3688315, at *3 (W.D.N.Y. Aug. 3, 2018).

In *Jay*, as here, the ALJ found more severe limitations in the RFC than in the step 3 findings. *Id.* at *4 (W.D.N.Y. Aug. 3, 2018). Absent explanation from the ALJ as to the reason for imposing greater limitations in the RFC than at step 3, the Court found remand was necessary. *Id.* In *Lynessa M.,* in contrast, the ALJ explained that although the medical evidence of record supported a finding of no more than moderate limitations, the ALJ was affording plaintiff the benefit of the doubt and crediting, in part,

her testimony regarding her difficulties interacting socially in a work environment to restrict plaintiff to only occasional superficial interaction with supervisors and coworkers and occasional to no interaction with the public. 2021 WL 4437184, at *5. Similarly, in *Hillary B.,* the Court found that an ALJ provided meaningful explanation for a more severe RFC limiting plaintiff to occasional supervision, occasional interaction with co-workers and no interaction with the public than his step 3 moderate limitation would suggest by noting the consultative examiner's opinion that notwithstanding generally moderate limitations in this area, plaintiff's PTSD could present challenges in dealing with the public or other unfamiliar people in the workplace. *Hillary B. v. Comm'r of Soc. Sec*., 21-CV-489, 2023 WL 2364813, at *4 (W.D.N.Y. March 6, 2023).

Remand was also required in a subsequent case where the Court was

> unable to discern why the ALJ did not discuss or consider at step 3 Dr. Ippolito's findings that Plaintiff has "marked" limitations in "regulating emotions, controlling behavior, and maintaining well-being" while specifically affording great weight to Dr. Ippolito's opinion in his RFC determination because "it was based on a detailed examination, program knowledge and is generally consistent with the overall record."

*Eric G. V. Comm'r of Soc. Sec*., 19-CV-1328, 2021 WL 972503, at *4 (W.D.N.Y. March 16, 2021). In contrast, the Court found "no inherent inconsistency" between an ALJ's step 3 finding of moderate limitations and a consultative examiner's assessment that plaintiff had "marked" limitations in his ability to understand, remember, or apply complex directions and instructions; interact adequately with supervisors, co-workers, and the public; and regulate emotions, control behavior and maintain well-being, where

the ALJ expressly considered and cited the consultative examination in his step 3 analysis. *Richard B. V. Comm'r of Soc. Sec*., 20-CV-585, 2021 WL 4316908, at *5 W.D.N.Y. Sept. 23, 2021). Specifically, the Court found that "[t]he ALJ's finding that this medical opinion evidence was persuasive toward making the RFC determination does not create a binding effect on whether those opinions establish plaintiff's functional impairments under the 'paragraph B' criteria at step three." *Id.* at *6. The Court explained that unlike *Eric G*., "the ALJ's step three analysis discussed and considered findings from Dr. Fabiano's examination and such discussion provides the Court the ability to understand his reasoning." *Id.*

In the instant case, the ALJ found persuasive Dr. Ippolito's opinion that plaintiff had a marked limitation for regulating his emotions, controlling his behavior and maintaining his well being. Dkt. #7, p.30. The ALJ also found persuasive Dr. Dekeon's opinion that plaintiff had a marked limitation in his ability to interact appropriately with the general public and was limited to simple jobs in a low contact setting, as well as Dr. Chapman's opinion that plaintiff was limited to work in low contact settings. Dkt. #7, pp.30-31. As a result, the ALJ restricted plaintiff to no more than occasional interaction with supervisors and co-workers and no more than incidental interaction with the general public. Dkt. #7, p.26. As the Court is unable to discern from the decision the ALJ's rationale for the discrepancy between the moderate step 3 finding and the acceptance of Dr. Ippolito's opinion of a marked limitation in plaintiff's ability to regulate emotions, control behavior and maintain well-being as persuasive, or the discrepancy

between the moderate step 3 finding and the imposition of significant functional limitations pertaining to plaintiff's inability to interact with others, remand is warranted.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is granted and the matter is remanded for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**September 29, 2025**

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**